1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

IGNACIO HERANDEZ,

                        Plaintiff,

    v.

ROMEO ARANAS, *et al.,*

                        Defendants.

3:16-cv-00606-MMD-CBC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**[1]

      This case involves a civil rights action filed by Plaintiff Ignacio Hernandez ("Hernandez") against Defendants Romeo Aranas, Michael Koehn, Gloria Carpenter, John Fischer and Renee Baker (collectively referred to as "Defendants"). Currently pending before the Court is a motion for summary judgment filed by Defendants. (ECF No. 59.) Hernandez opposed the motion, (ECF No. 85), and Defendants replied. (ECF No. 87.) Having thoroughly reviewed the record and papers, the Court hereby recommends the motion for summary judgment be granted.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      This case arises from Hernandez's medical treatment while incarcerated in the Nevada Department of Corrections ("NDOC"). (ECF No. 8.)

      In December of 2011, Hernandez injured his back and shoulders causing ongoing pain and intermittent loss of function in his legs. (*Id.* at 5-7, 18-19, 25.) From the date of injury until present, he has been under the medical care of Defendants he alleges are treating his pain rather than the cause of his pain. (*Id.* at 7.) Defendants have actively

---

[1]    This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1   treated Hernandez, however, they have refused to order either an MRI or a CT scan and

2   have labeled Hernandez as "malingering."

3       Hernandez was also injured in February of 2015 after a fight with his cellmate.

4   (*Id.* at 5-6, 8, 19-20.)  At the time of the incident, prison staff examined both Hernandez

5   and his cellmate and did not observe any injuries on either man.  (ECF No. 59 at Exs. F,

6   G.)  However, on February 24, 2015, Hernandez requested medical care for his finger.

7   (ECF No. 85 at Ex. B, pp. 128.)  He saw Defendant Nurse Goodinez on March 8, 2015,

8   and later saw Defendant Dr. Koehn on May 27, 2015.  (ECF No. 8 at 22-23.)[2]  No

9   redness or swelling was observed and Hernandez was told to let his finger rest.  (ECF

10  No. 61-1 at 21-23.)  Hernandez alleges his medical providers waited three months to

11  evaluate his injury and they could not treat it due to the elapsed time.  (ECF No. 8 at 19-

12  23.)  As a result, Hernandez experiences pain in his left pinky finger.  (*Id.* at 23.)

13  **II.   LEGAL STANDARD**

14      Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle*

15  *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly

16  grants summary judgment when the record demonstrates that "there is no genuine

17  issue as to any material fact and the movant is entitled to judgment as a matter of law."

18  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify

19  which facts are material.  Only disputes over facts that might affect the outcome of the

20  suit under the governing law will properly preclude the entry of summary judgment.

21  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v.*

22  *Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a

23  reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,

24  speculative opinions, pleading allegations, or other assertions uncorroborated by facts

25  are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509

26  F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

27  _____

28  [2]    The record reveals these dates are, in reality, March 10, 2015, and May 22, 2015. (*See* ECF No. 61-1 at 21-22.)

2

Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary

1    judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

2    586–87 (1986).

3         For purposes of opposing summary judgment, the contentions offered by a *pro*

4    *se* litigant in motions and pleadings are admissible to the extent that the contents are

5    based on personal knowledge and set forth facts that would be admissible into evidence

6    and the litigant attested under penalty of perjury that they were true and correct. *Jones*

7    *v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

8    **III.    DISCUSSION**

9         **A.    Eighth Amendment Deliberate Indifference**

10        A prisoner can establish an Eighth Amendment violation arising from deficient

11   medical care if he can prove prison officials were deliberately indifferent to a serious

12   medical need. *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976). A claim for deliberate

13   indifference involves the examination of two elements: "the seriousness of the

14   prisoner's medical need and the nature of the defendant's response to that need."

15   *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds,*

16   *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997) (*en banc*) (citing

17   *Estelle,* 429 U.S. at 106); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012)

18   (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need

19   exists if the failure to treat a prisoner's condition could result in further significant injury

20   or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing

21   *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include

22   "an injury that a reasonable doctor or patient would find important and worthy of

23   comment or treatment; the presence of a medical condition that significantly affects an

24   individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*,

25   974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)

26   (citation omitted).

27        If the medical need is "serious," the plaintiff must show the defendant acted with

28   deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Jett*, 439 F.3d at 1096.

4

1    "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051,
2    1060 (9th Cir. 2004).   Deliberate Indifference entails something more than medical
3    malpractice or even gross negligence.  *Id.*  Inadvertence, by itself, is insufficient to
4    establish a cause of action under section 1983.  *McGuckin*, 974 F.2d at 1060.  Instead,
5    deliberate indifference is only present when a prison official "knows of and disregards
6    an excessive risk to inmate health or safety; the official must both be aware of the facts
7    from which the inference could be drawn that a substantial risk of serious harm exists,
8    and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

9    Deliberate indifference exists when a prison official "den[ies], delay[s] or
10   intentionally interfere[s] with medical treatment, or it may be shown by the way in which
11   prison officials provide medical care."  *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir.
12   2013) (internal quotation marks and citation omitted).   Additionally, evidence of an
13   improper or ulterior motive can support a conclusion that a defendant acted with
14   deliberate indifference.  *See, e.g., Jackson v, McIntosh*, 90 F.3d 330, 332 (9th Cir.
15   1996) (dismissing appeal for lack of jurisdiction: " . . .as Jackson has alleged the doctors
16   chose to deny him the opportunity for a kidney transplant, not because of an honest
17   medical judgment, but on account of personal animosity.  If Jackson proves that claim
18   at trial, and he has shown that the delay in performing the kidney transplant was
19   medically unacceptable, he will have shown that the doctors were deliberately
20   indifferent to his serious medical needs.")

21          I.     Medical Care of Hernandez's Back and Shoulders

22   Hernandez has submitted multiple medical kites, inmate request forms, and
23   grievances between February 2015 and January 2019.  (*See* ECF Nos. 59, 85, 85-1.)
24   Most of these complain about chronic pain, ask for medical imaging to be taken or ask
25   for medication refills. (*See, e.g.,* ECF No. 85 at 33, 35, 37, 38, 39, 42, 43, 50, 52, 53,
26   54, 65, 66, 67, 68, 69, 70, 71, 74, 75, 76, 78, 86, 87, 109, 111, 112, 117, 126, 128, 129;
27   ECF No. 85-1 at 2, 3, 4, 8, 10, 13, 26, 27, 28, 29, 40, 56, 59.)  Prison staff's responses
28   state Hernandez's medication would be refilled, he had been seen or would be

1   scheduled to be seen by a medical provider, the medical issue was being addressed, or

2   he had refused to comply with medical imaging.  (*Id.*)  Some of the kites do not contain

3   specific medical requests and frequently include citations to Eighth Amendment legal

4   standards.  (*See, e.g.,* ECF No. 85 at 35, 38, 42, 43, 54, 62, 64, 76, 83.)

5       A review of Hernandez's medical records indicates he was seen by ESP medical

6   providers on numerous occasions regarding his back and shoulder pain.   His

7   complaints of pain were noted, he was examined and prescribed pain medication in the

8   form of ibuprofen (ECF No. 61-1 at 49, 51), naproxen (*Id.* at 4,13, 19), toradol (*Id.* at 7,

9   39), and lidocaine jelly.  (*Id.* at 9.)  His medical providers could not discern an objective

10  cause of Hernandez's claims of chronic pain.   In fact, it was frequently noted medical

11  providers or prison staff observed Hernandez engaging in daily activities with no

12  difficulty, salsa dancing in his cell, walking to and from exams and getting on and off

13  exam tables without difficulty, leading medical providers to conclude Hernandez was

14  malingering and being manipulative.

15      When Defendant Koehn saw Hernandez for complaints of back and shoulder

16  pain in 2011, he noted Hernandez was malingering and being manipulative in order to

17  be transferred to another prison yard.  (*Id.* at 39-45, 51.)  The belief Hernandez is

18  malingering is repeated throughout the record by Defendants, who contend the "sincere

19  belief an inmate is malingering . . . does not support an allegation of deliberate

20  indifference." (ECF No. 59 at 8) (citing to *Rice ex rel. Rice v. Corr. Med. Servs.*, 675

21  F.3d 650, 684 (7th Cir. 2012)).   However, suspicions of malingering may be considered

22  an "ulterior motive supporting an inference a defendant failed to take a plaintiff's

23  condition seriously and thus acted recklessly in failing to provide proper care."  *See*

24  *Kirby v. Ryan*, 2017 U.S. Dist. LEXIS 216432 at *41 (D. Ariz., Oct. 31, 2017) (quoting

25  *George v. Sonoma County Sheriff's Dep't.*, 2010 U.S. Dist. LEXIS 111193 (N.D. Cal.,

26  Oct. 19, 2010)); *see also Graham v. Jubb*, 2012 U.S. Dist. LEXIS 92309, 2012 WL

27  2577539 (E.D. Cal., July 3, 2012) (citation omitted); *Goolsby v. Ridge*, 2012 U.S. Dist.

28  LEXIS 44098, 2012 WL 1068881 (S.D. Cal., Mar. 29, 2012).

1   Although suspicions of malingering may be considered an ulterior motive, a

2   difference of opinion between an inmate and prison medical staff is insufficient to

3   establish deliberate indifference.   *Toguchi*, 391 F.3d at 1058 (internal quotation

4   omitted).   Here, the record shows Hernandez's medical conditions were taken seriously

5   by Defendants.   Hernandez was examined and treated by prison medical providers for

6   his shoulder and back pain at least fourteen times in 2011 (ECF No. 61-1 at 39-45, 51),

7   fourteen times in 2012 (*Id.* at 31-38, 41-46), twenty-one times in 2013 (*Id.* at 23-30), five

8   times in 2015 (*Id.* at 19-21), eleven times in 2016 (*Id.* at 12-17, 19), and twenty times in

9   2017.   (*Id.* at 3-11.)   Medical providers ordered x-rays,[3] consistently prescribed pain

10  medication and kept Hernandez in the infirmary for a week-long stay in order to observe

11  and treat him.  (ECF No. 59 at Ex. A, pp. 23-30.)

12  Hernandez's allegations that Defendants refused to treat the cause of his pain or

13  order diagnostics to discover the cause of his ongoing back and shoulder issues (ECF

14  No. 8 at 6-19) are belied by his medical records.  Hernandez has presented, at most, a

15  difference of opinion regarding the course of treatment chosen by his medical providers.

16  He asserts failing to provide him with an MRI or CT scan constitutes deliberate

17  indifference.  To sustain a claim for deliberate indifference based on a difference of

18  opinion, Hernandez must establish the course of treatment chosen by his medical

19  providers was medically unacceptable under the circumstance, and in conscious

20  disregard of an excessive risk to Hernandez's health.  *Snow v.McDaniel*, 681 F.3d 978,

21  988 (9th Cir. 2012) (quoting *Jackson*, 90 F.3d at 332).  Hernandez has not introduced

22  evidence to raise a genuine dispute of material fact to defeat Defendants' motion for

23  summary judgment on this basis.  Hernandez was repeatedly assessed and evaluated

24  for his complaints of chronic pain.  He was consistently prescribed pain medication and

25

26  _____

27  [3]   X-rays were ordered multiple times, but were not completed until September 30, 2016, and July 19, 2017, because Hernandez refused to cooperate as he wanted a CT scan or MRI performed instead. (*See* ECF No. 85 at Ex. D, pp. 33, 66, 68, 68; *see also*

28  Ex. H.)  The x-rays revealed only mild to moderate degenerative changes consistent with aging.  (*Id.* at Ex. H.)

1    medical providers attempted to get x-rays of the injuries.  Despite repeated evaluations,

2    and admission to the infirmary for observation, his medical providers could not discern

3    an objective cause of his pain, noting he was able to function appropriately in

4    contradiction to his complaints of disabling pain.  In light of this evidence, the Court

5    cannot conclude the treatment choices made by Defendants' were medically

6    unacceptable or made in conscious disregard of an excessive risk to Hernandez's

7    health.  Therefore, summary judgment should be granted in favor of Defendants as to

8    this claim.

9              II.    Medical Care of Hernandez's Finger

10           On February 18, 2015, Hernandez alleges he got into a fight with his cellmate.

11   (ECF No. 8 at 5-6, 8, 19-20.)   Prison staff did not observe the fight or any injuries on

12   either inmate (ECF No. 59 at Exs F, G), and Hernandez did not complain about any

13   injuries until six days later on February 26, 2015.  (ECF No. 85 at Ex. B, pp. 128.)

14   Hernandez was evaluated on March 10, 2015 and medical providers noted that his

15   chart did not document a fight having occurred.  Furthermore, medical providers did not

16   observe an injury and encouraged Hernandez to let his finger rest.  (ECF No. 61-1 at

17   22.)   Hernandez's finger was examined again on March 31, 2015, no redness or

18   swelling was observed and he was able to move his finger.  (*Id.* at 21.)  On May 22,

19   2015, medical providers once again examined Hernandez's finger and once again

20   determined there was no injury.  (*Id.*)  Hernandez did not complaint about his finger

21   again until almost a year later, on January 26, 2016, at which time he was prescribed

22   ibuprofen for pain.  (*Id.* at 17.)  Hernandez has not complained of finger pain since.

23           Defendants argue the undisputed facts show Hernandez has no serious medical

24   need in this case to which they failed to respond.  (ECF No. 59 at 11-12.)  Hernandez's

25   medical records and the incident reports indicate he did not have any serious injuries

26   from the events at issue.  (*See, e.g.,* ECF No. 59 at Exs. F, G; ECF No. 61-1 at 17, 21-

27   22.)  Medical records show Hernandez was examined by medical providers on multiple

28   occasions, but no injury existed which would require ongoing care.  This is supported by

8

the fact Hernandez did not complain about his finger again until almost a year later and has not complained of it since.  Considering the facts regarding Hernandez's injuries in the light most favorable to him, his injuries do not rise to the level of an objectively significant medical need requiring treatment to avoid serious further injury.  Since Hernandez did not have a serious medical need, there can be no deliberate indifference.  Therefore, the Court recommends summary judgment be granted in favor of Defendants as to this claim.

### B.    Qualified Immunity

Defendants contend they are entitled to qualified immunity on all claims.  (ECF No. 59 at 13-14.)  As discussed, *supra*, the facts do not show Defendants violated Hernandez's constitutional rights, therefore no qualified immunity analysis is required. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating if no constitutional right was violated, the court need not inquire further).  Accordingly, the Court recommends summary judgment be granted.

## IV.    CONCLUSION

Based upon the foregoing, the Court recommends Defendants' motion for summary judgment (EF No. 59) be granted.  The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants motion for summary judgment (ECF No. 59) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: June 18, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**